■ BARBARA DUCHARME, Respondent, v MARSHALL DU-CHARME, Appellant. (And Another Related Action.)—Mercure, J. Appeal from a judgment of the Supreme Court (Walsh, Jr., J.), ordering, inter alia, equitable distribution of the parties' marital property, entered May 1, 1986 in Clinton County, upon a decision of the court, without a jury.

The parties were married in July 1968. They are the parents of three children, all of whom reside with plaintiff. Deterioration of the marital relationship caused the parties to separate and plaintiff to commence an action for divorce in November 1980. Defendant commenced a separate action for divorce in April 1984, and the actions were joined and proceeded to trial in May 1984. Following a lengthy trial, adjourned from time to time and not concluded until April 1985, Supreme Court granted a dual judgment of divorce and distributed the marital property. The principal assets of the marriage, the marital residence and family farm, were divided equally between the parties. The court directed defendant to

convey his interest in the marital residence to plaintiff, pay plaintiff $115,747.14 as a distributive award, in exchange for a conveyance of her interest in the farm property, and pay one half of plaintiff's expert witness fees and $120 per week for child support. On this appeal, defendant asserts that errors were made in the award of expert witness fees and child support. Defendant's principal challenge, however, is to Supreme Court's identification, valuation and eventual distribution of marital assets.

Initially, defendant argues that Supreme Court erred in classifying marital property as of May 1984. We agree, but find that the error was harmless. Domestic Relations Law § 236 (B) (1) (c) defines marital property as "all property acquired by either or both spouses during the marriage and *before* * * * the commencement of a matrimonial action" (emphasis supplied). The date that plaintiff commenced her action marked the end of the accumulation of marital property and, therefore, of the economic partnership *(see, Bara v Bara,* 115 AD2d 628, 630, *lv denied* 70 NY2d 609; *see also, Muller v Muller,* 116 Misc 2d 660; Samuelson, *Notes and Comments,* 15 Fam L Rev 1-2 [Dec. 1983]). Accordingly, Supreme Court should have classified marital property as of the date of commencement of plaintiff's action notwithstanding defendant's institution of the second action shortly prior to trial. However, since each of the assets which came into existence between the date of commencement of plaintiff's action and May 1984 was traceable to a marital asset, as a substitute or automatic accretion, the error is harmless *(see, Siegel v Siegel,* 132 AD2d 247, 255, *appeal dismissed* 71 NY2d 1021). Here, all livestock in existence at the time of trial were either on the farm in November 1980 or were the progeny of that livestock. Further, all equipment and machinery classified as marital property was either purchased prior to November 1980 or, if purchased thereafter, by trading in pre-1980 equipment and paying the balance due with farm profits. Farm income during the pendency of the action was itself a marital asset, as evidenced by the fact that the parties continued to file joint income tax returns. Therefore, there was no change in the over-all complexion of the assets *(cf., Brennan v Brennan,* 103 AD2d 48, 53-54). As with many businesses, the machinery, livestock and equipment of a family farm will fluctuate over a period of months or years.

Similarly, we do not find that Supreme Court abused its discretion in valuing the marital property as of the time of trial. In *Lord v Lord* (124 AD2d 930), this court held that

"unless doing so would be patently inequitable, valuation of marital property is properly fixed at the commencement of the action" *(supra,* at 932; *cf., Wegman v Wegman,* 123 AD2d 220, 234 [where the Second Department held that the valuation date is to be chosen by the trial court in light of the particular circumstances presented]; Florescue, Domestic Relations Law, NYLJ, May 20, 1987, at 1, col 1). However, under the unique circumstances of this case we conclude that it would be patently inequitable to value the marital property as of November 1980. Supreme Court's finding that by then the parties had firmly in place all of the farm improvements, additions and programs which bore fruit in subsequent years is amply supported by the record. This, coupled with the fact that defendant retained for his own benefit all profits from the farm during the 3½-year pendency of the action and the substantial increase in the value of the asset during that period, justified the utilization of the later date by Supreme Court *(see, Wegman v Wegman, supra,* at 237). While the labor of defendant, in conjunction with market forces and inflation, arguably contributed to the substantial increase in value, any claimed inequity is more than offset by defendant's retention of farm profits and by his receipt of the tax benefit of unused depreciation of $97,772 for 1982 and thereafter, largely as a result of farm capital improvements made by the parties prior to November 1980. When a business is under the complete control of one spouse, the court must select a valuation date that will permit a meaningful and realistic appraisal of the business's true worth, to avoid patent inequities to the nonmonied spouse *(see,* Samuelson, *Notes and Comments,* 20 Fam L Rev 1-2 [June 1988]; *see also, Siegel v Siegel,* 132 AD2d 247, *supra; Wegman v Wegman,* 123 AD2d 220, *supra).*

Next, we turn to defendant's assertion that Supreme Court should not have credited the testimony of plaintiff's expert witnesses. It is well settled that the weight to be attributed to expert testimony is left to the trier of fact *(Wilbur v Wilbur,* 116 AD2d 953, 954; *cf., Capasso v Capasso,* 129 AD2d 267, 271, *lv denied* 70 NY2d 988) and we see no reason to disturb Supreme Court's findings in regard to the valuation testimony. Nor did the court err in its distribution of the marital property. Supreme Court gave a clear and detailed analysis of the factors it considered, so as to provide a basis for intelligent appellate review *(see, Gape v Gape,* 110 AD2d 621), finding that plaintiff engaged in the performance of various forms of farm labor even after the birth of the children; that she devoted herself to the rearing of the children, to the care and

cleaning of the home, the preparation of the meals, washing, ironing and cooking; that she kept the books and records of the farm, paid the bills and was a party to all decisions relating to the operation of the farm and its development. Given Supreme Court's findings, which are amply supported by the record, its distribution of marital assets on a 50-50 basis cannot be said to constitute an abuse of discretion and, thus, should not be disturbed (see, Petrie v Petrie, 124 AD2d 449, 450, lv dismissed 69 NY2d 1038).

We do agree with defendant that Supreme Court erred in its valuation of outstanding financial obligations. Marital debt should have been determined as of April 1984, the time when marital property was evaluated. Instead, Supreme Court evaluated marital debt as of May 1985, at the conclusion of the trial. The record discloses that, as of April 1984, $7,503.02 was owed on various items of farm equipment and $3,637.40 on the silos, and the outstanding mortgage balance was $89,048.81, rather than $83,330.71. The aggregate debt of $100,189.23 must be deducted from the total marital property of $374,825, leaving a net value of $274,635.77; each party's share will be $137,317.88. Plaintiff's distributive award must, accordingly, be reduced to $107,317.88.

Defendant's remaining arguments do not require extended discussion. Supreme Court did not abuse its discretion in directing defendant to pay one half of plaintiff's expert fees (see, Domestic Relations Law § 237 [a]; Brocato v Brocato, 126 AD2d 695; Ahern v Ahern, 94 AD2d 53; Walsh v Walsh, 92 AD2d 345). Giving due regard to the relevant statutory factors (Domestic Relations Law § 236 [B] [7]), we conclude that the record substantiates the award of child support.

Judgment modified, on the law, without costs, by reducing plaintiff's distributive award to $107,317.88, and, as so modified, affirmed. Kane, J. P., Casey, Weiss, Levine and Mercure, JJ., concur.