(February 18, 1993)

■ RICHARD B. GLAZER, Appellant, v PATRICIA A. GLAZER, Respondent.—Harvey, J. Appeal from a judgment of the Supreme Court (Lynn, J.H.O.) ordering, *inter alia,* equitable distribution of the parties' marital property, entered June 6, 1990 in Ulster County, upon a decision of the court.

The parties to this action were married in June 1962 and had two children, one of whom is now emancipated. During the marriage, the couple also raised to adulthood plaintiff's two children from his first marriage. Plaintiff initially commenced this divorce action in February 1985, but the case was removed from the court calendar after the parties' reconciliation in July 1986. The reconciliation only lasted about a year, however, and the action was again placed on the calendar. After it was restored, a nonjury trial was held and Supreme Court granted both parties a divorce on various grounds. A separate trial was then held to determine issues of equitable distribution, maintenance, child support and the custody of the parties' unemancipated daughter (born in 1974). Supreme Court granted defendant custody of the parties' daughter (with liberal visitation to plaintiff) and also granted defendant sole possession of the marital residence and its furnishings, title to a joint savings account containing $10,926.68 and a distributive award of $50,000, payable in 10 semiannual installments of $5,000 each. Plaintiff was awarded a checking account in his name with a balance of approximately $2,000, title to all pension and retirement benefits in his name and title to two bond funds and an annuity. Supreme Court further ordered plaintiff to pay maintenance of $100 per week

for 10 years and child support of $175.18 per week. This appeal by plaintiff followed.

Initially, we disagree with plaintiff that Supreme Court abused its discretion in its distribution of the marital assets. The court gave appropriate consideration to the statutory factors (see, Domestic Relations Law § 236 [B] [5] [d]). Accordingly, given the long-term nature of the marriage, the disposition of custody, plaintiff's relatively high income and defendant's contribution to plaintiff's career by raising the children while plaintiff furthered his education, we conclude that no abuse of discretion occurred in deciding how to distribute the marital assets. Nevertheless, because we find that Supreme Court made some errors in determining which assets were marital property, the matter must be remitted for a recomputation of the precise amounts awarded.*

Although the marital home was properly determined to be marital property (see, Domestic Relations Law § 236 [B] [1] [c]; Price v Price, 69 NY2d 8, 11), the record reveals that $5,000 of the downpayment was provided from an inheritance from plaintiff's parents; this amount should therefore have been listed as plaintiff's separate property (see, Domestic Relations Law § 236 [B] [1] [d] [1]). Plaintiff's pension fund was properly considered to be marital property because contributions were made into the fund on plaintiff's behalf during the marriage (see, Majauskas v Majauskas, 61 NY2d 481, 485-486). Nevertheless, we note that the only evidence introduced as to the value of the fund used a valuation date of December 31, 1988, several years after the commencement of this action. Although the parties were reconciled for approximately one year in this period, defendant apparently made no marital contribution to plaintiff's acquisition of these funds for a significant period of time which was nonetheless included in the valuation. Consequently, the matter must be remitted for a determi-

---

* We note parenthetically that although the following discussion includes a consideration of the appropriate valuation of plaintiff's pension fund and two bond funds as marital property, Supreme Court's decision states at one point that the value of these items was deducted from the total marital property amount and that these funds would be awarded to plaintiff. Although it could be argued that this statement rendered the actual value of these funds irrelevant, we conclude that their actual value should be properly considered because the remainder of the court's decision leaves the impression that the value of these items, particularly the pension fund, impacted on how the remaining moneys and defendant's distributive award were granted. Accordingly, while it might be that knowledge of the actual value of these funds will not substantially alter the distribution of assets, we cannot make that assumption on this record.

nation of the proper value of the pension fund measured by contributions made during the marriage and reconciliation (see, Cohn v Cohn, 155 AD2d 412, 413).

Similarly, we find that Supreme Court erred in determining that the entire value of the Travelers Tax Shelter Annuity was marital property. Although defendant contends that all of plaintiff's contributions to the fund were made during the parties' reconciliation, the evidence indicates that the fund was acquired by plaintiff with periodic contributions between March 1987 and June 1988 from separate funds acquired after the commencement of the action (see, Domestic Relations Law § 236 [B] [1] [c]). Because the reconciliation allegedly only lasted for approximately one year from July 1986, Supreme Court erred in finding that defendant had met her burden of establishing the value of an asset claimed to be marital property (see, Michalek v Michalek, 114 AD2d 655, 657, lv denied 69 NY2d 602).

Despite plaintiff's contentions otherwise, we conclude that Supreme Court did not commit reversible error in determining that the two bond funds plaintiff apparently purchased after the commencement of this action were marital property. It appears from the record that the source of money for plaintiff's purchase of the bond funds was an $18,000 loan from plaintiff's Equitable Life Tax Shelter Annuity, which was acquired by plaintiff during the marriage (see, Price v Price, supra, at 11). Therefore, the bond funds were traceable to marital property despite the date of acquisition (see, Ducharme v Ducharme, 145 AD2d 737, 738, lv denied 73 NY2d 708). As for plaintiff's assertion that $6,000 of the $10,926.68 in the parties' joint savings account was his separate property because he acquired it through an inheritance, this contention must also be rejected. Because plaintiff commingled his separate assets with marital assets in a joint account, the money was transformed into marital property (see, Di Nardo v Di Nardo, 144 AD2d 906, 907; Lischynsky v Lischynsky, 120 AD2d 824, 826-827).

Next, we find that Supreme Court did not abuse its discretion in fashioning an appropriate maintenance award under all the circumstances of the case. In making an award, consideration must be given to certain statutory factors, including (1) the length of the marriage, (2) the relative financial positions of the parties, (3) the parties' future earning capacity, and (4) the presence of children in the parties' respective lives (see, Domestic Relations Law § 236 [B] [6] [a]). Here, the parties were married for 23 years prior to commencement of

the action, during which time defendant was a homemaker and only worked part time. Notably, defendant possessed only a high school diploma, earned $13,200 per year and was charged with custody of the parties' unemancipated child. In contrast, plaintiff had several advanced degrees, earned over $50,000 per year and did not have custody of any children. In light of these and other factors, we find Supreme Court's award appropriate.

With respect to the issue of child support, we find that although plaintiff's contention that the Child Support Standards Act (hereinafter the CSSA) *(see,* Domestic Relations Law § 240 [1-b]) should not have been applied is without merit, Supreme Court nevertheless improperly calculated the support award under the CSSA. Supreme Court was required to first determine the amount of the parties' gross income and then deduct maintenance payments and FICA deductions. The two adjusted incomes are then added, and that amount is multiplied by a set percentage, in this case 17% (Domestic Relations Law § 240 [1-b] [b] [3] [i]). The amount is then prorated in the same proportion as each party's income bears to the combined parental income. Here, in arriving at plaintiff's weekly support obligation of $175.18, Supreme Court failed to subtract plaintiff's FICA deductions and also neglected to include defendant's income in making its calculation. Because a computation using the correct CSSA amounts could well result in a reduced obligation for plaintiff, remittal for a recalculation of the support amount is required.

Finally, we have reviewed Supreme Court's custody and visitation order and find no grounds for disturbing it. In any event, because the record indicates that the parties' daughter reached the age of 18 during the pendency of this appeal, the issue of custody or visitation is moot *(see, Belsky v Belsky,* 172 AD2d 576). The remaining arguments of the parties not already addressed have been examined and rejected.

Mikoll, J. P., Yesawich Jr., Crew III and Mahoney, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded equitable distribution and child support; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.